# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

### COLUMBIA DIVISION

| | | |
|---|---|---|
| WILLIAM NATHAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:02-2681-CMC-BM |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| RICHLAND COUNTY SCHOOL | ) | |
| DISTRICT 2, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This action has been filed by the Plaintiff pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq.. Plaintiff, a former employee of the Defendant Richland County School District 2, alleges that he was discriminated against on the basis of his race (African American). See Second Amended Complaint.

The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on February 2, 2005. After receiving an extension of time, Plaintiff filed a memorandum in opposition on March 7, 2005, and a hearing was held before the undersigned on June 7, 2005, at which both parties were represented by able counsel. Defendant's motion is now before the Court for disposition.[1]

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendant has filed a motion for summary judgment. As this is

1



### Background and Evidence[2]

Plaintiff was employed as an auto mechanics teacher at Spring Valley High School in Richland County School District 2 under provisional certification regulations of the South Carolina State Board of Education. Plaintiff began work with the School District in 1996. It is undisputed that Plaintiff's position requires a South Carolina Trade and Industrial teaching certificate, and that pursuant to state law and Board of Education regulations Plaintiff had five (5) years in which to obtain a certificate by passing the appropriate examination. Defendant's Exhibit B to Motion of Law in Support of Motion for Judgment on the Pleadings filed April 10, 2003. It is further undisputed that Plaintiff's employment contract provided that a failure to maintain the necessary professional qualifications or certifications would constitute grounds for termination, that State Board of Education Regulation R-43-63 and S.C.Code Ann. § 59-26-40(L) required that Plaintiff pass the Education Entrance Examination (EEE) before he could obtain the required professional Trade & Industrial certificate to continue teaching, and that a passing score on the EEE was required to be achieved before or during his five years of provisional certification. Defendant's Exhibit B, at pp. 6-7.

Plaintiff completed the necessary professional educational courses in order to be a certified teacher, but did not pass the appropriate examination to obtain a certificate by the time his certification was due to expire on June 30, 2001. Plaintiff's Affidavit, Plaintiff's Exhibits 7 & 8;

---

a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]The facts and evidence are considered and discussed in this Report and Recommendation in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).



<u>Defendant's Exhibit B</u>, at p. 6.[3]  Plaintiff was then terminated by the Defendant on June 30, 2001, with his failure to obtain the required certification from the State Board of Education being the reason given for this termination. Plaintiff appealed his termination to the District's Board of Trustees in accordance with the South Carolina Teacher Employment and Dismissal Act; S.C.Code Ann. § 59-25-410, <u>et. seq.</u>; and an administrative hearing was held on January 15, 2002.  On March 12, 2002, the Board of Trustees upheld the recommendation of the District's administration that Plaintiff be terminated from his employment.  <u>Defendant's Exhibit 12 to Memorandum of Law in Support of Judgment on the Pleadings filed April 10, 2003 [Record Appendix]</u>.

Plaintiff testified that during the course of his employment, the Defendant offered little assistance to him in his attempts to obtain his certification. <u>Plaintiff's Deposition</u>, pp. 66-67, 73-75.  Plaintiff also testified that following his termination, he met with administrative personnel in an attempt to obtain some other position with the District, but was offered only minimum wage positions, which he refused.  <u>Plaintiff's Deposition</u>, pp. 11-13, 34-37; <u>Javis Deposition</u>, pp. 11, 14-17, 19-20, 22-24.  Plaintiff testified, however, that white employees received assistance in obtaining certification for teaching positions, as well as help with placements.  <u>Plaintiff's Deposition</u>, pp. 26, 75-77, 82-86, 92; <u>Plaintiff's Exhibits 6, 9-10</u>.

Finally, Plaintiff testified about several incidents which, Plaintiff contends, constituted harassment or hostile conduct against him during the course of his employment. Specifically, Plaintiff testified that he believed he had been passed over for attendance at conventions, that he was slighted in terms of his work space and work environment, that he was

---

[3] It is undisputed that Plaintiff  took the necessary examination on four separate occasions (once in 1996, and three times in 2001), but never passed the examination.

3



accused of plagiarism and other improper conduct, and that funding for his department was threatened, all because of his race. See generally, Plaintiff's Deposition, pp. 100, 102, 104-116, 123, 128-134, 137-143, 149-151.

Following the filing of an administrative charge of discrimination with the Equal Employment Opportunity Commission (EEOC), and after receipt of a right to sue letter, Plaintiff filed this action in United States District Court asserting that his failure to retain his employment with the Defendant was on account of his race, and that during the course of his employment with the Defendant he was subjected to a racially hostile work environment.

### Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.

### I.

### (Race Discrimination Claim)

Plaintiff's race discrimination claim is for disparate treatment, based on his allegation that he was discriminated against at work on the basis of his race when he was terminated from his position after not being offered any assistance by his employer, including help in finding another position. Disparate treatment cases under Title VII require proof of intentional discrimination,

4



either by direct evidence or indirect evidence. Plaintiff does not argue that he has any direct evidence of race discrimination.[4] However, the absence of direct evidence of discrimination is not fatal to Plaintiff's claim, as direct proof of discrimination rarely exists in this type of case. In such a situation, indirect evidence of discrimination may be presented through the structured procedures set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>See</u> <u>also</u> <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981). Consideration of Plaintiff's claim under the so-called "mixed-motive" analysis is also now allowed, even though Plaintiff has presented only circumstantial, or indirect, evidence of discrimination. <u>Hill v. Lockheed Martin Logistics Mgt., Inc.</u>, 354 F.3d 277, 284-285 (4th Cir. 2004); <u>see also</u> <u>Mereish v. Walker</u>, 359 F.3d 330, 339-340 (4th Cir. 2004); <u>Machinchick v. PB Power, Inc.</u>, 398 F.3d 345, 352 (5th Cir. 2005) [ADEA].[5]

　　　1. **McDonnell Douglas Framework.** The United States Supreme Court articulated a three-part formula for analyzing Title VII discrimination cases in <u>McDonnell Douglas</u>. <u>First</u>, the Plaintiff must establish a prima facie case of discrimination. If a prima facie case is established, a rebuttable presumption is created that the employer unlawfully discriminated against the Plaintiff. <u>Second</u>, once this presumption has been established, the burden of production shifts to the employer to show a legitimate, non-discriminatory reason for its actions. <u>Third</u>, if the employer shows a legitimate, non-discriminatory reason for its actions, the burden is then on the Plaintiff to come



---

　　　[4]Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact without any inferences or presumptions. <u>O'Connor v. Consolidated Coin Caterers Corp.</u>, 56 F.3d 542, 548-549 (4th Cir. 1995), <u>rev'd on other grounds</u>, 517 U.S. 308 (1996); <u>Black's Law Dictionary</u>, 460 (6th Ed. 1990) (citing <u>State v. McClure</u>, 504 S.W.2d 664, 668 (Mo.Ct.App. 1974); <u>see</u> <u>Williams v. General Motors Corp</u>, 656 F.2d 120, 130 (5th Cir. 1981), <u>cert. denied</u>, 455 U.S. 943 (1982).

　　　[5]Previously, consideration of a claim under the mixed motive analysis was only proper in direct evidence cases. <u>Hill</u>, 354 F.3d at 284-285.

forward with evidence that the employer's asserted reasons for its actions are a mere pretext for its true discriminatory motives, and that the actions of the employer were really based on the Plaintiff's race. McDonnell Douglas Corp., 411 U.S. at 802-805; Texas Dep't of Community Affairs, 450 U.S. at 252-256; Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 234-235 (4th Cir. 1991). Despite these shifting burdens of production, however, the Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout. Texas Dep't of Community Affairs, 450 U.S. at 252-253; see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

In order to meet the first prong of the McDonnell Douglas formula and establish a prima facie case of race discrimination, Plaintiff must show  (1) that he is a member of a protected class; (2) that he was performing his job satisfactorily; (3) that he was subjected to an adverse employment action; and  (4) that other employees who were not members of his  protected class were treated more favorably, or there is some other evidence giving rise to an inference of unlawful discrimination. See generally, Austen v. HCA Health Services of Virginia, Inc., No. 00-2359, 2001 WL 242203 at **1 (4th Cir. Mar. 12, 2001);  Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995), cert. denied, 516 U.S. 870 (1995);  Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994). See also Gilbert v. Penn-Wheeling Closure Corp., 917 F.Supp. 1119 (N.D.W.Va. 1996).[6]  It is

---

[6]Some of these cases use variations of the prima facie case cited hereinabove. In its brief, the Defendant posits a prima facie case where Plaintiff has to show, in part, that he was qualified   for the position he held prior to his discharge. See Defendant's Brief, at p. 10. However, Plaintiff does not contend that he met the qualifications necessary for the position he held, as he concedes that he had not passed the EEE exam to obtain his certification.  Rather, Plaintiff's race discrimination claim is based on his argument that the Defendant took affirmative steps to assist white employees who were in the same situation as he was, including offering them other positions with the Defendant, while he [the Plaintiff] was not afforded these opportunities. Given the nature of Plaintiff's claim, the undersigned finds the prima facie case set forth hereinabove to be appropriate for use in this case. See Ennis v. National Ass'n of Business and Educational Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995) [The exact standard to be used in establishing a prima facie case is flexible depending on the

undisputed that Plaintiff is a member of a protected class (African American), and the evidence before this Court is sufficient to establish for purposes of summary judgment that Plaintiff had been a satisfactory employee with the Defendant. See generally, Javis Deposition, p. 20; see also Plaintiff's Exhibits 2-6,10. It is also undisputed that Plaintiff suffered an adverse employment action when he was terminated and not offered another position with the Defendant.

Defendant contends, however, that Plaintiff has failed to produce any evidence that a similarly situated white employee received more favorable treatment than he did, or any other evidence giving rise to an inference of unlawful discrimination, and has therefore failed to establish all of the necessary prongs of his prima facie case. After careful consideration of the arguments and evidence presented, the undersigned is constrained to agree.

Plaintiff testified that when he failed to pass the EEE exam, he requested assistance from his supervisors in February 2001, but that he received little assistance in response to this request. However, the evidence shows that after Plaintiff spoke to his supervisor, Assistant Principal Doug Odom, about needing assistance with this preparations to take the skills examination, Odom spoke with Dawn McLeod in the District Office, who then provided Plaintiff with material for him to read. Plaintiff's Deposition, pp. 61-62. Plaintiff testified that he thought the material he received from McLeod was "irrelevant" to what he needed [7], so he went to Spring Valley Principal Greg

_____

factual situation and the claim alleged.].

[7]Although Plaintiff testified at his deposition that the material he received from McLeod was irrelevant, his testimony at his employment hearing was that he "looked over some of this stuff [the material from McLeod]. It was similar to what I needed, but it wasn't enough to help me so I gave it right back. I went to another teacher at Spring Valley who was a writing teacher at Spring Valley, and she assisted me on some writing." Employment Transcript, p. 33.

7

Owings, who provided him with additional material to assist him. Plaintiff also received offers of assistance from math teacher Becky Cheatham and English teacher Carrie Murphy. Plaintiff's Deposition, pp. 63-66. Other than Murphy, all of these individuals are white. Plaintiff's Deposition, pp. 65-66.

Nevertheless, Plaintiff dismissed the effectiveness of the assistance he was offered, and testified that he believed the school administration should have tried to get him into "some type [of] curriculum which would afford [him] the adequate time and the facility." Plaintiff's Deposition, p. 67. However, Plaintiff could not recall if he had ever made a complaint about the time or facility he received, nor did he seek any other assistance from outside of the school district. Plaintiff's Deposition, pp. 67-68, 70.

With respect to other employment opportunities, Plaintiff testified that following his termination, he wanted to continue employment with the School District in some other capacity. Plaintiff testified that he asked Dan Cobb, the Human Resources Director, about whether he could be placed in a substitute teaching position or in the "critical needs program", but was advised by both Cobb and Tiniece Javis (African-American), Director of Certified Personnel and Recruitment, that no such positions were available. Plaintiff's Deposition, p. 12. Plaintiff also met separately with Javis, who offered Plaintiff positions as a school bus monitor and as a bus driver, both of which he turned down as being "insulting". Plaintiff's Deposition, pp. 13-14. Plaintiff also turned down a position doing community service work because he didn't think he could get along with Julia Boyd (African-American), who would have been his supervisor.[8] Plaintiff's Deposition, p. 15. Plaintiff

---

[8]Plaintiff testified that on his last day on the Spring Valley High School campus, Julia Boyd told him that "if the school district wanted to, they could have done something for you....could have retained you as a long-term substitute teacher, got you prepared to do what's necessary to get you,



8

testified that at the time he made this inquiry, "they were advertising for substitute teachers;" Plaintiff's Deposition, p. 12; and in an affidavit identifies several jobs that Javis did not offer him. See Plaintiff's Affidavit, p. 8, ¶ 27; see also Plaintiff's Exhibits 12, 13, 15, 17-21. However, the evidence reflects that some of the positions referred to by the Plaintiff in his affidavit post-date his meeting with Javis in July and August 2001; Javis Deposition, p. 12; and while Plaintiff also indicates in his affidavit that he "would have been qualified for many of these positions," he does not identify those for which he was qualified and those for which he was not qualified.

At oral argument, the position of "school to work assistant" was specifically identified by Plaintiff's counsel as a position Plaintiff could have filled. See Plaintiff's Affidavit, attached Exhibit 21. However, the posting date for this position was August 21, 2001, so it is again not clear whether this was a position available during the time he was meeting with Javis. The Defendant also argued that this position had a pay rate similar to the other jobs Plaintiff rejected[9]. As for the instructional aide positions, Javis testified that these positions paid less than one-half of

---

to be re-certified and re-instate you in your teacher position;" Plaintiff's Deposition, pp. 28-29; but that Boyd now denies making this statement, and is "lying about it." Plaintiff's Deposition, p. 32. For purposes of summary judgment, the undersigned has assumed Plaintiff's testimony as to what Boyd said to be true. Pittman, 87 F.3d at 118. However, it is not clear from the evidence exactly when Plaintiff learned that Boyd was disputing his version of their conversation, and in particular whether this dispute occurred after Plaintiff's meeting(s) with Javis. See Exhibit, Memorandum from Boyd to Hefner dated August 31, 2001 (handed up to the Court at the hearing). Further, when asked at his deposition whether he had undertaken any investigation into "this whole long-term substitute thing" in response to Boyd's comments, Plaintiff answered "no".

[9]This issue is important based on Plaintiff's own testimony about what type of jobs he would accept. Plaintiff testified at his employment hearing that he was only interested in "gainful employment" opportunities, which Plaintiff defined as meaning "earning a salary that you can take care of your family and live a decent life, and I can't live my lifestyle and continue to live my lifestyle which is not astronomical or out of the way on minimum wages." Employment Hearing Transcript, p. 47.



Plaintiff's teacher salary, while the substitute teaching positions paid less than the instructional aide positions.[10]  Javis testified that it therefore would not have occurred to her to offer Plaintiff either of these positions.   <u>Javis Deposition</u>, pp. 19-20, 23-24.

In any event, Javis testified at her deposition at some length about the jobs which were available at the time of her meeting(s) with the Plaintiff, what Plaintiff would have been qualified for, and what was offered to him and why; <u>see</u> <u>Javis Deposition</u>, pp. 12-20; and even assuming for purposes of summary judgment that there may have been some additional positions available which Javis did not discuss with him, Plaintiff has offered no basis, argument or rationale for why Javis, a fellow African-American, would have wanted to discriminate against him because of his race when discussing other job opportunities. Cf <u>Dungee v. Northeast Foods, Inc.</u>, 940 F.Supp. 682 n. 3 (D.N.J. 1996) [that decisionmaker is member of plaintiff's protected class "weakens any possible inference of discrimination"]; <u>Elrod v. Sears, Roebuck and Co.</u>, 939 F.2d 1466, 1471 (11th Cir. 1991) ["[I]t is difficult for a plaintiff to establish discrimination when the allegedly discriminatory decision-makers are within the same protected class as the plaintiff."]; *cf.* <u>United States v. Crosby</u>, 59 F.3d 1133, 1135 n. 4 (11th Cir. 1995) ["While we acknowledge that a Title VII violation may occur even where a supervisor or decision-maker is of the same race as the alleged victim....we note that the district court found that there was no evidence that [the decision-maker] held members of his own race to a higher standard of conduct than members of another race."].

As for whites being treated differently, Plaintiff testified that he believed white employees Jimmy Noonan, Henry Lovett , Tom Finney and Nina Tyler received better treatment

---

[10]While teachers who are certified qualify for a pay increase after working ten (10) days in a long term substituting position, employees who are not certified would not qualify for that pay increase.   <u>Javis Deposition</u>, pp. 23-24.



because they were helped with their placements and their employment was protected. However, after careful review of the material submitted to this Court, the undersigned does not find any evidence to support this claim. Plaintiff testified that Noonan was given the football coach's job and was later given the building administrator's job, but when asked if there was an African-American candidate who was better qualified for those positions than Noonan, Plaintiff responded "I wouldn't say that for that particular position....". <u>Plaintiff's Deposition</u>, p. 76. When further asked whether the District had helped Noonan obtain the qualifications to get into those positions, Plaintiff responded: "I wouldn't say that. I wouldn't say they helped him obtain the qualifications, no." <u>Plaintiff's Deposition</u>, p. 79.

With respect to Lovett, Plaintiff testified that Lovett was promoted his second year with the school district, and asserted that because Lovett's wife worked for the District Office, he "got some inside pull there." <u>Plaintiff's Deposition</u>, p. 76. However, assuming Plaintiff's statement to be true, this is not evidence of race discrimination. In order to maintain this claim, Plaintiff must present credible evidence to show that the Defendant's employment decisions were based on race, not because the Defendant was simply unfair or showed favoritism in its evaluations, or because of other factors. <u>Jamil v. Secretary Dep't of Defense</u>, 910 F.2d 1203, 1207-1208 (4th Cir. 1990); <u>Holder v. Raleigh</u>, 867 F.2d 823, 828 (4th Cir. 1989); <u>Crowley v. Prince George's County</u>, 890 F.2d 683, 687 (4th Cir. 1989), <u>cert.</u> <u>denied</u>, 111 S.Ct. 101 (1992); <u>McCollum v. Bolger</u>, 794 F.2d 602, 610 (11th Cir. 1986), <u>cert. denied</u>, 479 U.S. 1034 (1987); <u>see generally</u> <u>Moore v. Sears, Roebuck & Co.</u>, 683 F.2d 1321, 1323, n. 4 (11th Cir. 1982); <u>Jones v. Orleans Parish School Board</u>, 679 F.2d 32, 38 (5th Cir. 1982), <u>modified on other grounds</u>, 688 F.2d 342 (5th Cir. 1982), <u>cert. denied</u>, 461 U.S. 951 (1983); <u>North Carolina Dep't of Corrections v. Gibson</u>, 301 S.E.2d 78, 85 (N.C. 1983); <u>St. Mary's</u>

11



Honor Ctr. v. Hicks, supra. Further, in response to additional questioning, Plaintiff conceded that he did not know if Lovett had the necessary certification for the position he received[11], and also stated that he had never raised any complaint concerning Lovett's qualifications for his position with the Department of Education. Plaintiff's Deposition, p. 80.

With respect to Nina Tyler, Plaintiff complained that Tyler was placed in a position dealing with "retarded kids" because she was not getting along with a colleague in her previous position. When asked at his deposition what this had to do with his situation or whether his treatment would have been equal to the treatment that Tyler received if he had been placed in another position, Plaintiff responded "[o]ur situations are different, but you asked me this question." Plaintiff's Deposition, pp. 84-85.

With regard to Tom Finney, who was Plaintiff's predecessor, Plaintiff testified that he retired, but that after he retired he returned to school to be a substitute teacher. However, Plaintiff did not point to or indicate any basis for racially discriminatory treatment with regard to Finney's employment in his deposition testimony. Plaintiff's Deposition, pp. 86-87. Plaintiff's complaint is apparently that he [the Plaintiff] never received a substitute teacher position. See discussion, supra.

Finally, when specifically asked whether he knew of any white employees who had received the preferential treatment of which he complains, Plaintiff responded as follows:

**Question**:    Okay. Next question would be...let's get more specific. Do you know of any other individual or is it your contention that any other individual received more instruction or more remediation to help them

---

[11]Plaintiff alleged in his Affidavit that Lovett received a position for which he was not certified. Plaintiff's Affidavit, ¶ 10.



                              pass a test?

**Answer**:        No.

**Question**:    Do you know of any white employee who received
                      any remediation or instruction at all to help them pass
                      a test?

**Answer**:        When you say know, know anybody, any white? No.

**Questions**:  What you said right before the no is what I don't quite
                      get. I mean do you know of that happening on any
                      other circumstance?

**Answer**:        Of, of someone being helped to pass the test?

**Question**:    Right.

**Answer**:        Other than the information that Greg Owings gave me
                      about a former teacher of his who needed some
                      additional time to pass the National Teacher, the NTI,
                      whatever it is.[12]

**Question**:    NTE or whatever it is?

**Answer**:        Whatever, yeah.

**Question**:    That's the only thoughts you would have on that?

**Answer**:        As of now. That, that....and Greg, Greg Owings, you
                      know, when he came to me about it, he was serious
                      about it where his statement that he made, and it
                      didn't seem to me like, like he was just saying
                      something just to be saying something.

**Question**:    So you don't know if that individual would have
                      gotten any instruction for example to help him pass

_____

        [12]Plaintiff's counsel also referenced this teacher during oral argument. However, this is the
only reference in Plaintiff's testimony to this unnamed teacher.  No information has been provided
with regard to who this teacher is, what their race is, what the circumstances were surrounding this
purported "additional time", whether it was within the 5 years provisional certification period, or
any other information. See also Plaintiff's Exhibit 10.



the test?

**Answer**:  No.

Plaintiff's Deposition, pp. 82-83.

**Question**:  How about any other white employees that you think were treated differently than you or treated better than you, let's say.

**Answer**:  Okay.

**Question**:  I mean because...let me ask this. Do you think any white employees were treated worse than you in any circumstances that you can think about?

**Answer**:  And I am not going to jump so fast to say no. I'm thinking real hard about that.

**Question**:  Okay.

**Answer**:  Not to my knowledge. Not to my knowledge.

Plaintiff's Deposition, pp. 95-96.

The undersigned can discern no evidence of race discrimination in this testimony, or in any of the other evidence that has been presented with respect to this claim. See also, Javis Deposition, pp. 13-14, 22-23, 40-43, 52-54. Significantly, Plaintiff has also offered no evidence to show that any of the officials cited by him as being involved in his failure to be retained by the school district ever made any racist statements, or indicated in any way that the actions being taken with respect to Plaintiff's employment were because he is African-American or because of any type of racial animus, nor did Plaintiff's counsel have any evidence to offer on this point at the hearing. To the contrary, counsel conceded that Plaintiff had good to excellent relationships with his supervisors. See Causey v. Balog, 162 F.3d 795, 801-802 (4th Cir. 1998) [affirming summary judgment where employee failed to show that his employer's alleged mistreatment was based on



14

his race]. Plaintiff's own conclusory opinion and belief that he was the victim of race discrimination because he did not receive more assistance in an effort to retain his employment with the Defendant, no matter how heartfelt, is simply not sufficient to establish a prima facie case of discrimination or to survive summary judgment. <u>Beale v. Hardy</u>, 769 F.2d 213, 214 (4th Cir. 1985) [A party opposing summary judgment "cannot create a general issue of fact through mere speculation or by the building of one inference upon another."]; <u>Causey</u>, 162 F.3d at 802 [conclusory statements without evidentiary support insufficient to create genuine issue of fact]; <u>Glover v. Lockheed Corp.</u>, 772 F.Supp. 898, 901 (D.S.C. 1991) [summary judgment granted where Plaintiff failed to produce sufficient evidence to create a genuine issue of material fact as to whether he was discriminated against]; *cf.* <u>Smith v. J. Smith Lanier & Co.</u>, 352 F.3d 1342, 1345 (11th Cir. 2003) [employee cannot establish a prima facie case for failure to promote where employee failed to apply for position at issue].

       At summary judgment, the non-moving party has an obligation to present evidence to save his allegations from the status of speculation, and must respond with specific facts showing a genuine issue for trial. Rule 56, Fed.R.Civ.P.; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Gairola v. Virginia Dep't of General Services</u>, 753 F.2d 1281, 1288, n. 4 (4th Cir. 1985) [a case should be dismissed "...when the only evidence in support of the plaintiff's...case is based on unfounded conjecture...that [his] disfavorable treatment was the result of discrimination...."]. Plaintiff has failed to do so in this case. Therefore, Plaintiff's disparate treatment race discrimination claim fails under the <u>McDonnell Douglas</u> analysis.

       **2. <u>Mixed Motive Analysis</u>.** In a mixed motive case, once the Plaintiff has produced evidence that an illegitimate criterion was a motivating factor in the employment decision, both the



burden of production and the burden of persuasion shift to the Defendant, and the Defendant must show by a preponderance of the evidence that it would have made the same employment decision without any discriminatory animus. Fuller v. Phipps, 67 F.3d 1137, 1142 (4th Cir. 1995); Desert Palace, Inc. v. Costa, 539 U.S. 90, 93-102 (2003). See also 42 U.S.C. § 2000e-2(m). However, whether Plaintiff's claim is considered under the McDonnell Douglas analysis or a mixed motive analysis, the outcome of Defendant's motion for summary judgment does not change based on the facts and evidence presented because Plaintiff has failed to present sufficient evidence, either directed or circumstantial, to show that an illegitimate criterion (i.e., Plaintiff's race) was a motivating factor in the employment decision. See Discussion, supra. Mereish, 359 F.3d at 339-340; Love-Lane v. Martin, 355 F.3d 766, 786-787 (4th Cir. 2004); see Dare v. Wal-Mart Stores, Inc. 267 F.Supp.2d 987 (D.Minn. 2003).

Therefore, Plaintiff's disparate treatment race discrimination claim is subject to dismissal even if considered under the mixed-motive analysis.

## II.

### (Hostile Work Environment Claim)

Plaintiff also asserts a claim for hostile work environment in this case (Second Cause of Action). Title VII hostile work environment claims are evaluated under the framework set forth in McDonnell Douglas and its progeny. See Spicer v. Commonwealth of Virginia Dep't of Corrections, 66 F.3d 705, 710 (4th Cir. 1995); Brown v. Perry, 184 F.3d 388, 393 (4th Cir. 1999). Under the McDonnell Douglas analytical framework, in order to establish a hostile work environment, Plaintiff must present evidence to prove the following elements:

1.      He was subjected to unwelcome conduct in a work related setting;

16



2.    The conduct complained of was based on his race;

3.    The conduct was sufficiently severe or pervasive to alter the
Plaintiff's condition of employment and to create an abusive work
environment; and

4.    The conduct is imputable on some factual basis to his employer.

<u>Ocheltree v. Scollon Productions, Inc.</u>, 308 F.3d 351, 356 (4th Cir. 2002), <u>rehearing</u> <u>en</u> <u>banc</u>, 335

F.3d 325 (4th Cir. 2003), <u>cert.</u> <u>denied</u>, 124 S.Ct. 1406 (2004); <u>Spicer</u>, 66 F.3d at 710; <u>Brown</u>,

184 F.3d at 393; <u>Shield v. Federal Exp. Corp.</u>, 2005 WL 102990 at **3 (4th Cir. Jan. 19, 2005)

(citing <u>Spriggs v. Diamond Auto Glass</u>, 242 F.3d 179, 183-184 (4th Cir. 2001)).

For purposes of summary judgment only, the Defendant does not contest that Plaintiff

was subjected to conduct that was unwelcome.  However, Defendant argues that the incidents on

which Plaintiff relies for his hostile work environment claim were not based on his race, and were

in any event not sufficiently severe or pervasive to constitute actionable harassment.  Defendant

further argues that there is no basis for imputing liability to Plaintiff's employer, Richland School

District 2.

Plaintiff identifies several instances of purported harassment during his period of

employment with the Defendant in support of this claim.  First, Plaintiff testified that he was the last

choice to represent the school at a Trade and Industrial Teacher convention in San Diego, California,

and was only selected after two white employees could not attend.  <u>Plaintiff's Deposition</u>, pp. 98-

101. Plaintiff testified that the Advisory Committee[13] first selected white employee Steve Wilson,

and then when he could not go, white employee Monet Jones was suggested, before Plaintiff was

---

[13]The race of each member of this Advisory Committee is not indicated in Plaintiff's
testimony. <u>Plaintiff's Deposition</u>, pp. 98-99. At the hearing, neither counsel knew the racial
composition of the Committee.



finally selected to be the one to attend the convention.    Plaintiff testified that when Jones was

suggested for the trip, his response was to instead recommend the Plaintiff, who he said "would do

a great job....". Plaintiff's Deposition, p. 100.  Plaintiff also complained that Wilson on one occasion

had his students sweep their trash into Plaintiff's classroom area.  Plaintiff testified that after he

complained to Odom, Odom had Wilson "clean the mess up".  Plaintiff's Deposition, pp. 100-102,

137-138.

          Plaintiff also complains that he was initially excluded from the School District

departmental website photograph.  Plaintiff testified that there were three attempts to take this

picture: the first attempt was scratched because of bad lighting; and the second attempt was

scratched because employee Nancy Wilson was not there. Plaintiff testified that the third time he

was a few minutes late, but that the picture was taken anyway.  Plaintiff testified that after the

picture was taken, "Penny[14] ...said we cannot do that....so they had to go back and take the picture

with me."  Plaintiff's Deposition, pp. 104-105.  When Plaintiff was asked why he thought the

members of the Department wanted to keep him out of the picture because of his race, Plaintiff

responded by referring to a separate situation involving Brenda Snyder, an employee who taught

occupational technology and who Plaintiff also identifies as an "administrator". Plaintiff's

Deposition, p. 111.   Plaintiff testified that Snyder tried to discredit him by bad mouthing him on

several occasions.  Plaintiff testified that Snyder first "wanted to find a way for [Plaintiff's] District

portion of the program funding to be used in some other area, or the State Department funding, for

me to close, to open the automotive repair shop for the general public to do work for the general

---

[14]Penny's race is not indicated in the testimony. However, at the hearing counsel indicated
that the individual in question was Penny Wendt, who is white.



public and generate revenue like that, and that was totally against the State Department of Education policy." <u>Plaintiff's Deposition</u>, pp. 105-106. Plaintiff thought that this was racist because his was the only area suggested by Snyder for a funding reduction, and he was the only African-American. <u>Plaintiff's Deposition</u>, p. 109. Plaintiff testified that Snyder also "put the word out" that he was plagiarizing his lesson plans, and that he believed that this was based on his race because questions about other instructors' lesson plans were never an issue. <u>Plaintiff's Deposition</u>, pp. 110-112. Plaintiff testified that Snyder referred to him as "boy" on several occasions, although he conceded that he never reported Snyder's comments to anybody. <u>Plaintiff's Deposition</u>, pp. 112-113. Plaintiff also suspected that shortly after he first started working at Spring Valley, Snyder had bad mouthed his performance, although he conceded he did not know that for a fact. <u>Plaintiff's Deposition</u>, pp. 121-123. Finally, Plaintiff testified that Snyder misquoted what he had said to a visiting speaker, placing him [the Plaintiff] in a negative light. Plaintiff testified that when he complained to Owings, Owings said that he would speak to Snyder. Plaintiff testified that he had no information to suggest that Owings did not speak to Snyder, and apparently he had no further problems with her. <u>Plaintiff's Deposition</u>, pp. 114-115. Plaintiff testified that he believes Snyder's actions were based on his race because he never saw any evidence of her doing or saying similar things to or about white employees, while he was the only black male in the Department. <u>Plaintiff's Affidavit</u>, p. 6, ¶ 17.

Plaintiff also testified that he was harassed by Dean Ganis, an interim building administrator. Plaintiff testified that in 2000 Ganis walked through his class and said, in front of his students, that there were nails on the ground behind the shop and that Plaintiff needed to take his students and go out there and pick them up. Plaintiff stated that his students said to him that Ganis



didn't have any respect for him. <u>Plaintiff's Deposition</u>, pp. 125-127. Plaintiff testified that he went to Interim Principal Ben Nesbitt and complained that he was being "harassed" by Ganis, and that Nesbitt said he would talk to him. Nesbitt did speak to Ganis, and Plaintiff testified that Ganis later came up to him in the hall and apologized, saying "I didn't mean for you to feel that I was harassing you about asking you to clean up behind your shop." <u>Plaintiff's Deposition</u>, pp. 130-131. When asked why he believed Ganis had done this to him because of his race, Plaintiff responded "well, why couldn't he have asked, or why couldn't he have asked the...white teachers to pick-up...their mess....". <u>Plaintiff's Deposition</u>, p. 133. Plaintiff also testified that he never asked Ganis why he had approached him instead of another teacher, and responded "yes" when he was asked "so you just made the assumption that he was doing that because of your race?". <u>Plaintiff's Deposition</u>, p. 134.

Plaintiff also testified that Guidance Counselor Phil Grubbs placed students with excessive absences in his class despite his objections. <u>Plaintiff's Deposition</u>, p. 138. Plaintiff testified that he went to Doug Odom and told him he needed to move those kids because they had not met all of the requirements to be in his class with excessive absences, following which the kids were moved. <u>Plaintiff's Deposition</u>, pp. 140-141. Plaintiff testified that he felt like this was harassment because he was going to have to babysit those kids. However, when asked if he knew whether any white teachers had kids in their classes that they didn't want under similar circumstances, or whether that had happened before in a white teacher's class, Plaintiff responded "possible. It's possible." <u>Plaintiff's Deposition</u>, pp. 144-145.

Finally, Plaintiff complained that a white teacher, Maurice Copeland, refused to invite him to his birthday party, which was held at the school. Plaintiff testified that Copeland "invited folk from all over the campus to come in and be a part of his birthday party, but he wouldn't

20



invite me." <u>Plaintiff's Deposition</u>, p. 149.  Plaintiff testified that he believed this was because he is black, because "I heard him, I heard him address a black kid as, as little Sambo, and the kid was in my class. The kid's name was Sam Brinson.  You don't call anybody black Sambo."  <u>Plaintiff's Deposition</u>, p. 150.  Plaintiff testified that this incident occurred during his second or third year with the District.  <u>Plaintiff's Deposition</u>, p. 150.  Plaintiff acknowledges that he never said anything to Copeland about this, nor did he complain to the administration. <u>Plaintiff's Deposition</u>, pp. 150-151. Plaintiff also testified that he does not know if other black teachers were invited to Copeland's birthday party. <u>Id</u>.

After careful review of these arguments and consideration of this claim in the light most favorable to the Plaintiff, the undersigned finds and concludes that Plaintiff has failed to present sufficient evidence to create an issue of fact with respect to his hostile work environment claim to survive summary judgment.  First, even if the incidents cited by the Plaintiff can all be deemed to constitute harassment, there is little evidence to denote a racial component to much of the cited conduct.  While Plaintiff was not the first employee selected to go to the San Diego convention, Plaintiff himself testified that the reason he was the one ultimately selected was because he was recommended by another white employee.   The undersigned does not find that the incident involving the departmental picture even constitutes harassment, no matter how liberally construed. Nor is there any evidence to suggest that the incidents involving Ganis or Grubbs had a racial component, other than Plaintiff's own unsubstantiated speculation. <u>See</u> <u>Bolden v. PRC, Inc.</u>, 43 F.3d 545, 551 (10th Cir. 1994), <u>cert.</u> <u>denied</u>, 516 U.S. 826 (1995) ["General harassment if not racial or sexual is not actionable"]; <u>Norris v. City of Anderson</u>, 125 F.Supp.2d 759, 769 (D.S.C. 2000) ["since plaintiff's allegation contains no racial animus, it cannot be used to support his hostile work



21

environment claim"].

Further, even assuming that the evidence, considered in the light most favorable to the Plaintiff, is sufficient to suggest that Snyder's or Copeland's conduct, or even Wilson's having some students sweep their trash into Plaintiff's classroom area, had a racial component, the incident with Wilson happened one time in apparently 2000 [Plaintiff's Deposition, pp. 97-98, 138-139], and the incident with Copeland was a one time occurrence in either 1998 or 1999.[15]  The five or so[16] incidents involving  Snyder were apparently spread out over the five years of his employment. Sporadic and isolated conduct or comments are not sufficient under the applicable caselaw to create a genuine issue of fact as to whether the conduct was so severe or pervasive as to render the workplace objectively hostile or abusive. See Hopkins v. Baltimore Gas & Electric Co., 77 F.3d 745, 754 (4th Cir. 1996) ["Title VII was not designed to create a federal remedy for all offensive language and conduct in the work place."]; Hartsell v. Duplex Products, 123 F.3d 766, 773 (4th Cir. 1997); see Guidry v. Zale Corp., 969 F.Supp. 988, 990 (M.D.La. 1997) [isolated comments do not constitute severe or pervasive conduct]; Cram v. Lamson & Sessions, 49 F.3d 466, 474 (8th Cir. 1995) [sporadic or casual comments are unlikely to support a hostile environment claim].

Finally, there is no evidence, even assuming that Plaintiff has satisfied the other three

---

[15]Defendant argues that many of Plaintiff's claims are time barred from consideration by this Court, as they fall outside the 300 day period for making a claim required by statute. See 42 U.S.C. § 2000e-5(e)(1).  However, hostile work environment claims may, where appropriate, encompass claims that fall outside of this 300 day period. National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116-118 (2002) ["The timely filing provision only requires that a Title VII Plaintiff file a charge within a certain number of days after the unlawful practice happened.  It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period."].

[16]Plaintiff testified that Snyder referred to him as "boy" on several occasions, but did not give a number. Plaintiff's Deposition, pp. 112-113.



elements for a hostile work environment claim, to impute the conduct complained of to the Defendant in this case for purposes of liability. Under the applicable caselaw, if the hostile environment was created by a supervisor with immediate or successive higher authority over the Plaintiff, the Defendant may be subject to vicarious liability. <u>Faragher v. City of Boca Rotan</u>, 118 S.Ct. 2275, 2292-2293 (1998). However, Plaintiff has presented no evidence to show that any of the conduct he cites was engaged in by one of his supervisors.[17] Therefore, since there is no evidence one of Plaintiff's supervisor was involved, the cited conduct may only be imputable to the Defendant for purposes of liability if the evidence shows that the Defendant was negligent in failing, after actual or constructive knowledge, to take prompt and adequate action to stop the harassment. <u>Alexander v. Alcatel NA Cable Systems, Inc.</u>, 50 Fed.App x. 594, 601 (4th Cir. Oct. 15, 2002); <u>Mikels v. City of Durham</u>, 183 F.3d 323, 332 (4th Cir. 1999); <u>Spicer</u>, 66 F.3d at 710. Such a situation would arise either where the employer had actual knowledge of the harassing behavior, or where "the harassment was so pervasive that employer awareness may be inferred." <u>Ford v. West</u>, 222 F.3d 767, 775-776 (10th Cir. 2000) ["A plaintiff demonstrates actual employer knowledge where the plaintiff has reported harassment to management-level employees....An employer may be

_____

[17]Although Snyder is at one point referred to by Plaintiff as an "administrator"; <u>see</u> <u>Plaintiff's Deposition</u>, p. 111; there is no evidence to show that she was ever in a supervisory position over the Plaintiff. The undersigned questioned counsel closely at the hearing with regard to Snyder, and neither counsel knew anything about her or her job duties, other than that Plaintiff at one point referred to her as the "co-chair" of "the Department". <u>See</u> Plaintiff's Affidavit, ¶ 15. However, the evidence before the Court clearly identifies Odom, Owings, and (at one point) Nesbitt as being Plaintiff's supervisors, with Plaintiff testifying at his employment hearing that Odom was his immediate supervisor. <u>See</u> Employment Hearing Transcript, p. 31. <u>See</u> also <u>Vernarsky v. Covenant Transport, Inc.</u>, No. 01-305, 2003 WL 21212776 at * 4 (E.D.Tenn. Apr. 15, 2003)["The burden of proof to show that [the harasser] was the Plaintiff's supervisor lies with the Plaintiff."](quoting <u>Sicalieds v. Pathmark Stores, Inc.</u>, 2000 WL 760439 (E.D.Pa. June 12, 2000)(citation omitted <u>see</u> also <u>McCormick v. Kmart Distribution Center</u>, 163 F.Supp.2d 807 (N.D. Ohio 2001); <u>Sullivan v. Newburgh Enlarged School District et al</u>, 281 F.Supp.2d 689, 705 (S.D.N.Y. 2003).



23

deemed to have constructive knowledge of racial harassment where the pervasiveness of the harassment supports an inference of employer knowledge....[T]o infer employer knowledge from only the level of pervasiveness essential to make out a hostile environment claim would be illogical because if that were the rule, knowledge would be attributed to employers in all cases of hostile work environment founded on pervasiveness."]; <u>EEOC v. Dial Corp.</u>, 156 F.Supp. 2d 926, 952 (N.D.Ill. 2001).

        Here, it is clear in the evidence that Plaintiff did not complain to any supervisor about much of the conduct which he cites, and that with respect to those incidents where Plaintiff did complain to a supervisor (thereby establishing actual knowledge), the supervisor took prompt and effective action to put a stop to the cited conduct.  Hence, the evidence before the Court, including Plaintiff's own testimony, shows that the Defendant exercised reasonable care to promptly correct incidents of harassment when reported by the Plaintiff, which is what it was required to do under the law. As Plaintiff has failed to present evidence sufficient to show that the Defendant failed to take prompt and effective remedial action when notified of the alleged offending behavior, Plaintiff has failed to satisfy the fourth prong of the four prong hostile work environment proof scheme, and his hostile work environment claim should be dismissed. <u>Parkins v. Civil Constructors of Illinois, Inc.</u>, 163 F. 3d 1027, 1032 (7th Cir. 1998) ["An employer's legal duty in co-employee harassment cases will be discharged if it takes reasonable steps to discover and rectify acts of [racial] harassment."]; <u>Hollins v. Delta Air Lines</u>, 238 F.3d 1255, 1258 (10th Cir. 2001) [Employer not liable where management acted on complaints to stop the harassing behavior, following which conduct complained of ceased]; <u>Alberter v. McDonalds Corporation</u>, 70 F.Supp.2d 1138, 1149 (D.Nev. 1999); <u>Knabe v. Boury Corp.</u>, 114 F.3d 407, 411, n. 8 (3d Cir. 1997) ["A remedial action

24



that effectively stops the harassment will be deemed adequate as a matter of law."]; <u>Mikels v. City of Durham</u>, 183 F.3d 323, 329-330 (4th Cir. 1999) [discussing importance of whether remedial action taken by the employer was effective]; <u>Fleenor v. Hewitt Soap Co.</u>, 81 F.3d 48 (6th Cir.), <u>cert.</u> <u>denied</u>, 117 S.Ct. 170 (1996) [the test is whether the employer failed to implement prompt and corrective action]; *cf.* <u>Waltman v. International Paper Co.</u>, 875 F.2d 468 (5th Cir. 1989) [denying summary judgment because employer did not take effective action].

### <u>Conclusion</u>

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **granted**, and that this case be **dismissed**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

June 15, 2005